UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

Peter Waasdorp, Jr.,

      Plaintiff,

      v.

TOWN OF FALMOUTH, MASSACHUSETTS; and
AHMED MUSTAFA; CAREY MURPHY;
MARY PAT FLYNN; KEVIN MURPHY;
and BRENT PUTNAM, individually and in
their official capacities as members of the
Board of Selectmen of the Town of Falmouth,

      Defendants.

_____

## COMPLAINT

### INTRODUCTION

1.      This is a civil rights action for the unlawful removal of Peter Waasdorp, Jr. from his position as Commissioner on the Conservation Commission of Falmouth, Massachusetts in 2009.  Waasdorp was a member of the Commission in 2008 when the Commission reviewed proposed plans to lease certain Falmouth bogs to a cranberry grower.  During a rushed lease review and approval process, Waasdorp carried out his responsibilities as a Conservation Commissioner and an engaged citizen by informing other Conservation Commissioners, town officials, and other agencies of his concerns regarding the lease, and by pressing for an adequate review process and a lease that was compliant with Massachusetts law and protective of the Town of Falmouth's interests.  Although outside agencies confirmed that Waasdorp's concerns were well founded, the Board of Selectmen removed Waasdorp from the Conservation Commission for this protected

1

speech, characterizing it as harassment of the Conservation Commission Chairwoman. The Board of Selectmen conducted what they called "a hearing" to review this speech, but denied Waasdorp the ability to properly confront the allegations brought against him or to present his own evidence.

2.      The removal of Waasdorp from the Conservation Commission violated his rights to freedom of speech, to petition, and due process of law.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the First and Fourteenth Amendments of the United States Constitution. Jurisdiction is provided by 28 U.S.C. §§ 1331 and 1343 for all federal claims and 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

4.       Venue properly lies with the Court pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

## PARTIES

5.      Plaintiff Peter Waasdorp, Jr. ("Waasdorp") is a resident of Falmouth, Massachusetts. He was appointed to Falmouth's Conservation Commission as an alternate member in September of 2006, and appointed as a full member in June of 2007. Falmouth's Conservation Commission is a body created in accordance with Mass. Gen. Laws ch. 40 § 8C. Its members are appointed by the Board of Selectman for three year terms, and can only be removed by the Board of Selectmen for cause, following a hearing.

6.      Defendant Ahmed Mustafa was at all times relevant to this complaint a member of the Board of Selectmen of Falmouth. His actions alleged in this complaint were taken

2

under the color of the laws of the Commonwealth of Massachusetts.  He is sued in his individual and official capacities.

7.        Defendant Kevin Murphy was at all times relevant to this complaint a member of the Board of Selectmen of Falmouth.  His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts.   He is sued in his individual and official capacities.

8.        Defendant Mary Pat Flynn was at all times relevant to this complaint a member of the Board of Selectmen of Falmouth.  Her actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in her individual and official capacities.

9.        Defendant Carey Murphy was at all times relevant to this complaint a member of the Board of Selectmen of Falmouth.  His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts.  He is sued in his individual and official capacities.

10.        Defendant Brent Putnam was elected to the Board of Selectmen of Falmouth in May of 2008, and has been a member of that Board since that time   His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in his individual and official capacities.

11.        Defendant Town of Falmouth is a duly organized town in the Commonwealth of Massachusetts. The decision by the Board of Selectmen to remove Waasdorp from the Conservation Commission constituted official action by the Town.

**FACTUAL ALLEGATIONS**

12.     On or about July 5, 2007, the Town of Falmouth released a request for proposals for a 20-year lease of certain bogs in Falmouth ("the Bogs") for cranberry cultivation. The Bogs are public lands and a natural resource, the use and disposition of which is governed by Article 97 of the Massachusetts Constitution.

13.     In September of 2007, SK Wainio Bogs, Inc. ("SK Wainio") entered a bid to lease the land and cultivate cranberries. The Town of Falmouth sent SK Wainio a notice of intent to award it the lease as well as a draft of the lease on or about December 12th, 2007. The town's lease advisory committee, which included Conservation Commission Chair Karen Wilson ("Wilson"), created this proposed lease agreement for the Bogs.

14.     On January 30, 2008, Wilson first informed the other members of Falmouth's Conservation Commission ("the Commission") that the town intended to lease the bogs to SK Wainio, that a draft of the lease had been created, and that the Commission would be required to vote on whether to approve the lease during an upcoming joint meeting with the Board of Selectmen. The Commissioners were told by e-mail on Saturday, February 2, 2008 that drafts of the proposed lease were waiting for them in the Commission's office in Falmouth's Town Hall, an office closed on the weekends and first accessible to the Commissioners on Monday, February 4, 2008. During a Commission meeting on February 6, 2008, Wilson instructed the other Commissioners to have comments and suggestions for modifications prepared by the next Commission meeting, scheduled for February 13, 2008, only one week away.

15.     During this February 6, 2008 meeting, Waasdorp expressed his objections to the lease. He noted that the draft of the lease contained numerous errors and problems, such

as, but not limited to, violations of the Uniform Procurement Act, a lack of specificity regarding acreage and bogs covered by the lease, the fact that the lease included bogs that had been retired from use during a Falmouth Town Meeting, and that important documents, such as SK Wainio's farming plan, had either not been provided to the Commission or were provided too late for a meaningful review of them to take place.

16.     Before the Commission members were due to submit their comments on the draft of the lease, a new draft was circulated to them on February 8, 2008.  Heather Harper ("Harper"), Falmouth's Assistant Town Manager, instructed the Commissioners to provide her with any edits or suggestions regarding this new draft by February 11, 2008. This effectively cut their review time down to less than four days.  This abbreviated time for review was particularly onerous to Commission members given the fact that the Commissioners are unpaid and serve on a part-time basis.

17.     During the review period, both Waasdorp and fellow Conservation Commissioner Linda Deegan ("Deegan") expressed concern and dissatisfaction to Wilson at how little time they had to review the lease.  Waasdorp also expressed concern to Wilson about the Commission's ability to properly review the lease given the number of relevant documents the Commission members were lacking. At the end of this review period, several Commission members, including Waasdorp, noted numerous serious problems with the draft lease and suggested modifications to Harper.

18.     On February 15, 2008, a joint meeting of the Board of Selectmen and the Conservation Commission was held to vote on whether to approve the lease.  Waasdorp attempted to discuss the problems with the lease, but was cut off by the Board of

Selectmen. Waasdorp, still convinced that the approval process had been inadequate and the lease was flawed, was the only Commissioner to vote against approving the lease.

19.     Throughout the process of the lease review and approval, Wilson served as Chair of the Commission and as a member of the Bog Lease Committee, serving as the liaison between the Commission and those town officials negotiating with SK Wainio.  Given that Wilson literally set the agenda for the Commission and had access to information, documents, and people that the other Commissioners did not, Waasdorp frequently directed his questions and concerns about both the proposed lease and lease review process to her.

20.     The numerous problems Waasdorp found with both the approval process and the lease itself required Waasdorp to send several dozen e-mails to Wilson and others during the abbreviated review period.  Although Waasdorp criticized the approval process in these e-mails and questioned why Wilson, as liaison, had not provided the Commission with necessary documents and information to inform their review and decision making, these e-mails also contained praise for Wilson for her hard work throughout the process, and acknowledged the difficult nature of her position.

21.     In addition to e-mailing Wilson, Waasdorp also brought his concerns to and sought information from the Massachusetts Association of Conservation Commissions ("the MACC"), the Massachusetts Office of the Inspector General, and the Massachusetts Attorney General's Office.  Wilson disapproved of Waasdorp contacting other agencies.  In one instance, she told the director of the MACC not to respond to Waasdorp, only to be told by the director that it was appropriate for individual commissioners to seek information and advice from the MACC.

22.     In the end, Waasdorp's concerns were shown to be well-founded.  Prior to the February 13 vote approving the lease, the director of the MACC and a MACC attorney both expressed agreement with Waasdorp that the lease approval process did not fulfill the legal requirements to lease Article 97 conservation land.  In addition, in March of 2008, subsequent to the town of Falmouth's approval of the lease, the Massachusetts Office of the Inspector General determined that the lease, in dropping a performance bond requirement that had been included in the Town of Falmouth's request for proposals, violated the state Uniform Procurement Act as Waasdorp had claimed, and instructed the town to modify the lease to comply with the law.

23.     On April 17th, 2008, Waasdorp received a notice from George Spivey ("Spivey"), Falmouth's Equity/Affirmative Action Officer, that Wilson had brought a complaint of harassment against him.  Spivey informed Waasdorp that the complaint was for "non-sexual" harassment, and asked him to explain the context of three e-mails he had sent to Wilson during the lease review process.

24.     These three e-mails were made in accordance with Waasdorp's responsibilities as a Commission member and as an active citizen to protect the environment in Falmouth.  Although passionate in tone, the e-mails, which were sent to Wilson and other commission members, related to the lease review process or other matters before the Commission.  The e-mails addressed such concerns as whether in reviewing the lease, Commission members were making personal attacks instead of focusing on business, and whether it was desirable to slow down the review process to avoid harmful errors.  The emails also requested important information needed by the Commission to properly carry out the lease review

process, and expressed frustration with how long Wilson and others had taken to provide these important documents.

25.	Spivey informed Waasdorp that his policy was to attempt to mediate disputes such as Wilson's complaint, and Waasdorp agreed to this process. Waasdorp accordingly met with Spivey and provided him with written explanations of the three e-mails in question, as well as a detailed description of the lease review and approval process, believing this information would be used for the purpose of mediation. However, Waasdorp learned on May 27, 2008 that Wilson never agreed to take part in any mediation.

26.	Based on conversation and correspondence with Waasdorp and Wilson individually, Spivey issued a report discussing the three e-mails. The report discussed both Wilson's interpretations and reactions to these e-mails, as well as Waasdorp's explanations, but made no actual findings regarding whether Spivey believed Waasdorp's e-mails constituted harassment.

27.	On August 11, 2008, the individual Defendants, acting as the Board of Selectmen of Falmouth, voted to appoint a hearing officer to examine evidence regarding Wilson's harassment complaint and to make findings of fact, which the Board could then act on. They selected attorney Charles Sabatt ("Sabatt") to act as the hearing officer. On September 12, 2008, Sabatt informed Wilson and Waasdorp that he intended to hold a hearing in late September or early October. He informed the parties that the rules of evidence for administrative hearings would pertain, that each side would be able to present witnesses and cross-examine the other party's witnesses, and that he believed the hearing would be open to the public.

28.     This hearing was delayed as a result of complaints from Wilson, who objected to the proposed procedures for the hearing.  Wilson wrote to Robert Whritenour ("Whritenour"), Falmouth's Town Manager, demanding that the town provide her with an attorney throughout the process.  Whritenour informed the Defendants that he believed Wilson would not pursue her complaint without independent counsel provided by the Town, and Defendant Carey Murphy expressed concern to the other Defendants, Spivey, and  Town Attorney Frank Duffy, that Sabatt's proposed process was not protective enough of Wilson's feelings or privacy.

29.     The Town of Falmouth did not provide Wilson with an attorney. Instead, in response to Whritenour and Defendant Carey Murphy's concerns, Sabatt informed Wilson and Waasdorp on December 3, 2008 that he would hold an investigation rather than a hearing, interviewing parties and witnesses privately.  Each party would be entitled to have counsel present during their own interview.

30.     On February 2, 2009, Waasdorp, through counsel, requested that Sabatt provide the following information before any interviews took place: 1) a written enumeration of all allegations presently levied against Waasdorp; 2) the statute, by-law, or ordinance granting Sabatt authority to investigate allegations made against Waasdorp; and 3) an explanation as to why this matter was not proceeding in an open meeting where Waasdorp and his witnesses could appear and testify.

31.     Sabatt sent Waasdorp a letter dated February 19, 2009, but did not respond to Waasdorp's inquiries.  The letter stated that although Sabatt would allow Waasdorp's attorney to attend the interview, the attorney would not be permitted to ask questions of Waasdorp or to request information from Sabatt.  Due to Sabatt's refusal to answer

9

Waasdorp's inquiries fully and the fact that the new interview format would deny him due process, Waasdorp declined to be interviewed on advice of counsel.

32.     Sabatt conducted interviews of Spivey, Wilson, and Conservation Commission member Betsy Gladfelter.  Waasdorp was not allowed to attend these interviews, nor was he provided with a copy of the record created by Sabatt's investigation.

33.     Sabatt issued a report on March 11, 2009.  The report acknowledged that Waasdorp had a right to ask questions and raise concerns during the lease review process. Specifically, the report stated that Waasdorp was entitled to ask Wilson and others questions; to seek information regarding issues before the Commission; to question the propriety of specific actions taken by municipal employees or officials; and that he was entitled to contact MACC and the Office of the Inspector General.  However, Sabatt characterized Waasdorp's various e-mails as critical and going outside the "chain of command."  Despite recognizing Wassdorp's right to ask questions, Sabatt concluded that taken together, the communications constituted intimidation and harassment of Wilson.

34.     The Defendants, acting as the Board of Selectmen of Falmouth, sent Waasdorp a notice, dated March 23, 2009, informing him that the Board of Selectmen would be holding a hearing on March 30, 2009 to consider Wilson's harassment complaint and to contemplate removing him from the Conservation Commission in accordance with Mass. Gen. Laws ch. 40 §8C.  The Defendants informed Waasdorp that he was entitled to bring counsel to the hearing, but stated that the Board would be relying exclusively on Sabatt's report for findings of fact, and that no further factual evidence could be presented or would be considered.

35.     At the hearing on March 30, 2009, both Wilson and Waasdorp were permitted to make statements, but Waasdorp was not permitted to introduce evidence outside of the Sabatt report, cross-examine Wilson or other witnesses that the Sabatt report relied on, or to present witnesses in his defense.   Wilson's statement at this meeting confirmed that the cause for her complaint was the e-mails Waasdorp sent her during and after the lease approval process concerning the proposed lease of the Bogs.

36.     The individual Defendants unanimously voted to remove Waasdorp from the Conservation Commission.

37.     The Defendants acted intentionally, willfully, and/or with reckless or callous indifference to Waasdorp's constitutional rights.

38.     Waasdorp was harmed as a result of the Defendants' decision to remove him from the Conservation Commission.  His removal was based on his protected speech, made in the course of carrying out his duties as an appointed official and as a citizen, a violation of his First Amendment rights to freedom of speech and to petition, as well as his right to freedom of expression under Article Sixteen of the Massachusetts Declaration of Rights.

39.     Waasdorp was also harmed by being removed as Commissioner after a hearing where he was not permitted to present factual evidence, produce witnesses, or cross-examine Wilson or any parties whose testimony formed the basis for Sabatt's report, and upon which the Board of Selectmen relied in making its decision.   Sabatt's earlier fact-finding process was equally lacking in due process. In removing Waasdorp in this fashion, the Defendants denied him the due process he was entitled to under the Fourteenth Amendment and the Massachusetts Constitution.

40.     Waasdorp suffered emotional distress as a result of the actions of the Defendants and he was deprived of his ability to carry out his duties under state law to protect local natural resources.

**COUNT I**
**42 U.S.C. § 1983 CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS**
**FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**

41.     The above paragraphs are incorporated by reference.

42.     By removing Plaintiff from his position as a Conservation Commissioner based on his protected expression relating to matters of public concern, the individual Defendants deprived Plaintiff of his well-established rights to freedom of speech and petition under the First and Fourteenth Amendments.

43.     As a direct and proximate result of the individuals Defendants' actions, Plaintiff suffered the damages described above.

**COUNT II**
**42 U.S.C. § 1983 CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS**
**FOR VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS UNDER**
**THE FOURTEENTH AMENDMENT**

44.     The above paragraphs are incorporated by reference.

45.     By denying Plaintiff the opportunity to present evidence and cross-examine the witnesses against him before his removal from the Conservation Commission, the individual Defendants deprived Plaintiff of his property and liberty without the due process of the law required by the Fourteenth Amendment.

46.     As a direct and proximate result of individual Defendants' actions, Plaintiff suffered the damages described above.

## COUNT III
### 42 U.S.C. §1983 *MONELL* CLAIM AGAINST DEFENDANT
### TOWN OF FALMOUTH

47.     The above paragraphs are incorporated by reference.

48.     The decision by the Board of Selectmen to remove Plaintiff from the

Conservation Commission because of his speech and petitioning, and without due process

of law, constituted the policy of the Town of Falmouth.

49.     As a direct and proximate result of the Defendants' actions, Plaintiff suffered the

damages described above.

## COUNT IV
### MASS. GEN. LAWS ch. 12, §§ 11H & I
### CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS

50.     The above paragraphs are incorporated by reference.

51.     By threatening to remove Plaintiff from his position as a member of the

Conservation Commission and by removing him from the position because of his vigorous

advocacy, the individual Defendants used threats, intimidation and coercion that interfered

with Plaintiff's exercise of rights guaranteed to him by the United States and Massachusetts

Constitutions, thereby violating the Massachusetts Civil Rights Act, Mass. Gen. Laws ch.

12, §§ 11 H and I.

## COUNT V
### MASS. GEN. LAWS ch. 231A, §1 et seq.
### DECLARATORY JUDGMENT ACT CLAIM AGAINST ALL DEFENDANTS

52.     The above paragraphs are incorporated by reference.

53.     There is an actual controversy between the parties as to whether the Defendants

violated Plaintiff's rights to freedom of expression, to petition the government, and to due

13

process of law under the Massachusetts Declaration of Rights, including Article 16 and

Articles 1, 10 and 12.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests that this Court:

1.        Declare that Defendants violated Plaintiff's rights;

2.        Award compensatory damages;

3.        Award punitive damages against Defendants Ahmed, Flynn, Carey Murphy,

Kevin Murphy, and Putnam;

3.        Award the costs of this action and reasonable attorneys' fees;

4.        Award such further relief as this Court may deem appropriate.

## JURY DEMAND

A trial by jury is hereby demanded on all claims so triable.

> PLAINTIFF PETER WAASDORP
> By his attorneys,
>
> /s/ Sarah R. Wunsch
> /s/ Laura Rótolo
> Sarah R. Wunsch, BBO # 548767
> Laura Rótolo, BBO # 665247
> ACLU of Massachusetts
> 211 Congress St., Third Floor
> Boston, MA 02110
> 617-482-3170
> swunsch@aclum.org
> lrotolo@aclum.org

Of Counsel:  Benjamin Jacobs, BBO # 678620
ACLU of Massachusetts
211 Congress St., Third Floor
Boston, MA 02110
617-482-3170
bjacobs@aclum.org

> Dated:  June 6, 2011

14